IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS TORRES,<br><br>    Plaintiff,<br><br>  v.<br><br>RITE AID CORP.,<br><br>    Defendant.<br>_____/ | No. C 05-02136 WHA<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this action alleging access discrimination against a visually impaired man, both sides move for summary judgment. Defendant Rite Aid Corp. operates the store that allegedly failed to conform to Americans With Disabilities Act building standards. It moves for summary judgment on plaintiff's ADA and state-law claims. Plaintiff Jesus Torres moves for summary judgment on whether certain in-store displays that protrude into the aisles of a Rite Aid store would violate ADA regulations. Neither side is entitled to judgment as a matter of law. Both motions are therefore **DENIED**.

## STATEMENT

At age four, plaintiff was diagnosed with glaucoma. He has a prosthetic right eye with no vision and limited vision in his left eye. He is generally unable to see objects as he walks

indoors, with the occasional exception of shopping carts at a distance of six inches or less (Jesus Torres Decl. ¶ 2 (Nov. 28, 2005) ("Jesus Torres Decl. I"); Jesus Torres Dep. 12–13, 89).[1]

The Rite Aid store where plaintiff alleges ADA violations is in Pittsburg, California (Jesus Torres Decl. I ¶ 4; Compl. ¶ 2). Defendant concedes that it operates the store (Br. 4, Def.'s Motion for Summary J.). The store's aisles are lined with shelves that hold merchandise ranging from vodka to diapers (Stewart Decl. ¶ 2, Exhs. 1–3 (Nov. 28, 2005) ("Stewart Decl. I")).[2] On April 13, 2005, plaintiff and his wife, Mabel Torres, visited the store. Although plaintiff went to the store on other occasions, the April 13 trip is the one primarily at issue in the case. During that visit, Ms. Torres encountered four or five objects sticking out from the shelves. One object was an advertising sign made of plastic and cardboard, which plaintiff felt with his hand. It projected about 9 to 11.5 inches from the shelf (Mabel Torres Decl. ¶¶ 2, 4–5; Torres Dep. 77; Stewart Decl. I ¶ 4, Exh. 2 (image of object)). It apparently consisted of paper attached to a hinged plastic clip that was affixed to a store shelf. The hinge allowed the advertisement to give way if a shopper bumped into it (Aversano Decl. ¶ 9). The other objects were identical or nearly identical to objects plaintiff's counsel later photographed in the store. One stuck out about five to 7.5 inches from a shelf and included hanging merchandise. Another was a plastic box that dispensed coupons from the end that jutted into the aisle. It protruded approximately 5.5 to 8 inches into the aisle. The lower edge of each object was between two feet, six inches and five feet, six inches above the floor. While in the store, Ms. Torres told plaintiff about only one of protruding objects (Mabel Torres Decl. ¶¶ 4–6; Jesus Torres Decl. I ¶ 2; Stewart Decl. I ¶¶ 2–3, 5, Exhs. 1, 3).

---

[1] Defendant has not challenged plaintiff's assertion that he is disabled under the ADA. *See* 42 U.S.C. 12102(2) (definition of disability).

[2] The Stewart declarations are unsworn and were not made under penalty of perjury. Defendant, however, has not objected to those deficiencies. The Court therefore accepts those declarations as competent evidence for purposes of the instant motions. *See United States ex rel. Austin v. W. Elec. Co.*, 337 F.2d 568, 574–75 & n.19 (9th Cir. 1964) (holding that court properly considered technically defective affidavits submitted in connection with summary judgment motion in light of opponent's failure to object); *see also Scharf v. U.S. Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) ("Generally . . . formal defects [such as an affidavit not being based on personal knowledge] are waived absent a motion to strike or other objection . . . .").

1  The blue plastic advertising sign that plaintiff and Ms. Torres encountered apparently
2  was one of the "Shelftalk" promotions that are common throughout
3  the store. (An example of such a display in a different store is
4  pictured at right.) These displays attach to shelves and project into
5  the aisles, parallel to the floor. The subjects and locations of the
6  promotions change about every four weeks (Aversano Decl. ¶¶ 6–8).

7  The Torreses went to the store April 13 to buy beer. Plaintiff carried with him the cane
8  he uses to detect objects in his path. He was dragging the cane on the ground to detect obstacles
9  but not using it with the same technique he used when by himself. In addition, Ms. Torres
10 guided plaintiff through the store by holding his arm. Plaintiff was also using his cane to
11 identify himself as visually impaired to passersby who might wonder why he was being guided
12 by another person. The Torreses browsed the merchandise for nearly twenty minutes before
13 getting their beer (Torres Dep. 55, 58–61; Jesus Torres Decl. I ¶ 4).

14 During the visit, plaintiff did not bump into any of the protruding objects he challenges
15 in this action (Torres Dep. 63–64). His wife guided him around four or five such objects
16 sticking out from shelves (Mabel Torres Decl. ¶ 4). On one occasion, he was walking down an
17 aisle with his right shoulder about an inch from the shelves when his wife abruptly told him to
18 stop. She then told him that his face had almost hit a plastic sign and guided him around it
19 (Torres Dep. 67–68, 71).

20 After April 13, plaintiff visited the store three times, most recently on December 19. He
21 planned to visit it again if he needs something sold there that he cannot find at an adjacent
22 supermarket. He visits the supermarket about once per month. Pittsburg borders the town
23 where he lives (Jesus Torres Decl. ¶ 2 (Dec. 20, 2005) ("Jesus Torres Decl. II")).

**ANALYSIS**

25 Summary judgment is proper where the pleadings, depositions, declarations, attached
26 documents and other evidence "show that there is no genuine issue as to any material fact and
27 that the moving party is entitled to judgment as a matter of law." FRCP 56(c), (e); 28 U.S.C.
28 1746 (allowing substitution of declaration made under penalty of perjury for sworn affidavits).

3

On summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### 1. Americans With Disabilities Act.

Title III of the ADA bars discrimination against people "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). A sales establishment is a public accommodation. 42 U.S.C. 12181(7)(E). When a portion of a facility is altered in a way that could affect its usability, those alternations must be made in "such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities . . . ." 42 U.S.C. 12183(a)(2). Anyone who is "subjected to discrimination on the basis of disability" in violation of Title III may bring an action for injunctive relief. 42 U.S.C. 12188(a); 42 U.S.C. 2000a-3(a).

The Attorney General was required to issue regulations to carry out Title III. 42 U.S.C. 12186(b). Defendant contends that these regulations, which are the foundation of plaintiff's claim, did not cover *moveable*, protruding objects such as those he encountered at the store. This order now considers the scope of the relevant regulations to determine if they apply. The Attorney General's regulations were binding on all alterations to places of public accommodation and commercial facilities that began after January 26, 1992. There is no dispute here that the protruding objects were added after that day. Alterations after that date must abide by the standards of the ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R., pt. 36, App. A. 28 C.F.R. 36.406(a).[3]

Evaluation of the regulations' scope begins with their stated purpose, which was to guide the "design, construction, and alternation of . . . buildings and facilities [of public accommodation]." 28 C.F.R., pt. 36, App. A, § 1. There is no dispute that the Rite Aid store is

---

[3] The store itself was built and first occupied before passage of the Americans with Disabilities Act (Stewart Supp. Decls.).

4

1  a public accommodation. The standards' definition of "alteration" is "a change to a place of
2  public accommodation or a commercial facility that affects or could affect the usability of the
3  building or any part thereof." A "building" is a "structure used and intended for supporting or
4  sheltering any use or occupancy." A facility is "[a]ll or any portion of buildings, structures, site
5  improvements, complexes, *equipment* . . . or other real or *personal property* located on a site."
6  A site is a "parcel of land bounded by a property line." *Id.* § 3.5 (emphasis added). Black's
7  Law Dictionary defines "personal property" as "[a]ny *movable* or intangible thing that is subject
8  to ownership and not classified as real property." Black's Law Dictionary (8th ed. 2004). The
9  regulations' stated coverage of "personal property" suggests that they are not limited to fixed,
10 permanent parts of the building. This is not dispositive of the issue, however, because in some
11 cases personal property *is* fixed to the building. When a commercial tenant affixes personal
12 property to a building it does not thereby become realty, as it would in a non-commercial
13 facility. In a commercial tenancy, such items are trade fixtures, which usually but not always
14 retain the qualities of personal property. *See generally* William M. Howard, Annotation, *What*
15 *Constitutes Trade Fixture — Modern Cases*, 107 A.L.R. 5th 311; *see also People v. Klopstock*,
16 24 Cal.2d 897, 903 (1944) ("Trade fixtures are regarded as personalty as between the tenant and
17 owner of the land . . . but as between the tenant and the condemning party they are regarded as a
18 part of the realty . . . .").

19 Sections 4.1.3(2) and 4.4.1 of the standards are at the core of the instant case. Section
20 4.1.3(2) covers alterations and states that "[a]ll objects that overhang or protrude into
21 circulation paths shall comply with 4.4." Section 4.4.1, a subpart of 4.4, states: "Objects
22 projecting from walls (for example, telephones) with their leading edges between 27 in. and 80
23 in. (685 mm and 2030 mm) above the finished floor shall protrude no more than 4 in. (100 mm)
24 into walks, halls, corridors, passageways, or aisles." 28 C.F.R., pt. 36, App. A, § 4.4.1.

25 Section 4.4.1 was intended to allow visually impaired people who use canes to avoid
26 crashing into protruding objects. As they sweep their canes back and forth, these individuals
27 can detect any protruding object less than 27 inches from the ground. The regulations therefore
28 do not limit how far objects below that height can protrude. Cane users, however, cannot detect

5

1  protruding objects located 27 inches or more above the floor so they generally stay at least four
2  inches from the wall. They are therefore unlikely to crash into an object that protrudes four
3  inches or less. 28 C.F.R., pt. 36, App. A, App. § 4.4.1. The maximum allowable protrusion is
4  therefore limited to four inches, "subject to conventional building industry tolerances for field





25  conditions." *Id.* App. A, §§ 4.4.1, 3.2 (allowances for industry tolerances). For illustration of
26  the regulation and cane techniques, see above. Reproduced from *id.* App. A, Figures 8(a)–(b) &
27  App., Figure A4.

### 2.     **Defendant's Motion for Summary Judgment On Section 4.4.1.**

Defendant contends that the ADA regulations apply to fixed, permanent parts of buildings but not to temporarily placed and moveable objects. It claims the display items encountered at the store by plaintiff were moveable. Defendant argues that the displays therefore could not have violated the regulations. It asks for summary judgment on that issue.

Defendant's contention that the regulations, as a whole, never cover moveable objects conflicts with the text of the regulations. In fact, the standards explicitly regulate freestanding objects in certain cases. They govern "[f]ree-standing" water coolers, which is the most obvious example of a moveable thing covered by the regulations. They also cover potentially moveable objects such as vending machines, library magazine displays, airport clocks, telephone books and devices that dispense tableware, condiments, food and beverages. 28 C.F.R., pt. 36, App. A, §§ 1, 4.15.5(2); 4.31.7; 5.6; 5.8; 8.4; 10.4.1(7). It is therefore impossible to accept the following syllogism advanced by defendant:  moveable objects are never regulated by the standards, the objects in question here are moveable and therefore those objects are not regulated. It would be error to dismiss, out of hand, the possibility that the protruding objects at the Rite Aid store were covered by the regulations.

The crucial issue thus becomes whether the placement of the Rite Aid displays were an alteration within the meaning of the ADA regulations. If so, then they *are* covered by Section 4.4.1. *See* §§ 4.1.1(1), 4.1.3(2), 4.1.6 and 4.4.1 (collectively mandating that alterations comply with Section 4.1.1). As stated above, an alteration is "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or any part thereof." This court simply does not have enough evidence to make a determination, as a matter of law, whether or not affixing the objects that protrude into Rite Aid's aisles were alterations under the ADA. This question turns on facts the parties have not addressed. For example, the answer may hinge on whether the displays can be removed quickly by a typical store employee, or whether a specialist must come in to move them. It may make a difference how much they weigh, how flexible they are, how they are affixed to the shelf and the exact nature of the shelves themselves. These myriad factual issues have not been

7

1  addressed by the parties. The Court has not even been presented with one of the objects, except
2  in low-quality, photocopied images. The Court therefore cannot rule, as a matter of law, on
3  whether putting the protruding objects on the shelves was an alteration. Without being able to
4  make that determination, this Court cannot grant summary judgment to defendant on the issue
5  of whether the objects at issue were covered by Section 4.4.1. This conclusion is bolstered by
6  the rule that, when considering defendant's motion, all justifiable inferences must be drawn in
7  plaintiff's favor. *See Anderson*, 477 U.S. at 255.

8  Defendant resorts to secondary authority to argue that the regulations do not cover
9  moveable objects. It states that the Access Board, which wrote the guidelines, described them
10  as "intended to address only that equipment that is fixed or built into the structure." This
11  comment, however, responded to a comment about "examining tables, diagnostic machinery,
12  and dental chairs" in medical offices. ADA Accessibility Guidelines for Buildings and
13  Facilities, 56 Fed. Reg. 35,408, 35,414–15 (July 26, 1991). To read the guidelines as not
14  addressing movable equipment and objects would be to read out of them the provision
15  governing free-standing water coolers. 28 C.F.R., pt. 36, App. A, § 4.15.5(2).

16  Next, defendant invokes the Department of Justice's Title III Technical Assistance
17  Manual, which states that "[o]nly equipment that is fixed or built in to the facility, is covered by
18  the accessibility standards . . . . Free-standing equipment is not covered by ADAAG [ADA
19  Accessibility Guidelines]." Department of Justice, Title III Technical Assistance Manual, pt.
20  5.3000 (1994). This interpretation fails for the same reason as the Access Board's gloss: it is
21  plainly inconsistent with the regulations themselves because it ignores the provision on free-
22  standing water coolers and may conflict with those covering such moveable objects as library
23  magazine displays and telephone books. *See Robertson v. Methow Valley Citizens Council*, 490
24  U.S. 332, 359 (1989) (agency interpretations not controlling if "plainly erroneous" or
25  "inconsistent with the regulation"); *Bay Area Addiction Research & Treatment, Inc. v. City of
26  Antioch*, 179 F.3d 725, 732 & n. 11 (9th Cir. 1999) ("The Justice Department's . . . Technical
27  Assistance Manual[] . . . will be disregarded only if plainly erroneous or inconsistent with the
28  regulation.") (internal quotation marks omitted). A similar fate befalls defendant's third

8

authority: a letter from a Department of Justice official stating that the regulations cover only "fixed building elements" and not "movable furniture or equipment." Furthermore, the official states that the letter "does not constitute a legal interpretation of the statute." *See* Letter from John L. Wodtach, Chief, Disability Rights Section, Department of Justice, to David A. Copus, Jones, Day, Reavis & Pogue (Feb. 10, 1998), Mezias Decl. ¶ 3, Exh. 2 (Nov. 30, 2005)), *available at* http://www.usdoj.gov/crt/foia/ltr213.htm (last visited Jan. 11, 2006) (internal quotation marks omitted).

Defendants also cite two district court decisions. In *Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999), Judge Marilyn Hall Patel held that the regulations covered fixed display units in a department store but not moveable display racks. *Id.* at 1077. Chief Judge Lewis T. Babcock made the same ruling in *Colorado Cross-Disability Coalition v. Too (Delaware), Inc.*, 344 F. Supp. 2d 707 (D. Colo. 2004). Such a holding would not extend necessarily to protruding objects or other parts of the regulations. There was additional authority influencing these decisions that has no bearing on the instant case. Display racks were addressed in the legislative history to the ADA. The regulations also refer to "*fixed or built-in* storage facilities such as . . shelves," a limitation that Judge Babcock used to limit the meaning of storage facilities in other parts of the regulations. 28 C.F.R., pt. 36, App. A, § 4.1.3(12)(a); *Colo. Cross-Disability Coalition*, 344 F. Supp. 2d at 713. These decisions therefore provide little guidance on the problem presented in the instant case.

Defendant also contends that Section 4.4.1 does not apply to the objects in controversy because it covers only objects protruding from "walls." It argues that the shelves at Rite Aid are not walls. There is no definition of "wall" in the ADA, its implementing regulations or any court decision. There is no evidence as to the exact structure and nature of the shelves from which the objects in this case protruded. Images of them, however, show typical drug-store shelving. They appear to have been independent of the room's exterior walls and to consist of vertical supports rising about six feet — only part-way to the ceiling — and supporting several shelves each. The shelves faced the store aisles (*see* Stewart Decl. I ¶¶ 2–5, Exhs. 1–3).

9

Given the bulk, solidity and seeming permanence of these shelving units, this Court cannot say that, as a matter of law, they are not walls in the context of Section 4.4.1. More evidence would be necessary to make such a determination on a motion for summary judgment. The shelving units are consistent with some dictionary definitions of "wall." *See*, *e.g.*, The American Heritage Dictionary of the English Language (Joseph P. Pickett et al. eds., 4th ed. 2000), *available at* http://www.bartleby.com/61/74/W0017400.html (last visited Jan. 13, 2006) ("[A]n upright structure of masonry, wood, plaster, or other building material serving to enclose, divide, or protect an area, especially a vertical construction forming an inner partition . . . of a building."). Furthermore, to exclude such a structure from the definition of wall here would defeat the remedial purpose of Section 4.4.1 in any aisle bordered by shelves. In such aisles, visually impaired people could not protect themselves from crashing into protruding objects. Because the ADA remedies discrimination, any construction given to it may be guided by the canon that remedial legislation is to be "construed broadly to effectuate its purposes." Given these considerations, Rite Aid is not entitled to summary judgment on its liability under Section 4.4.1 solely on the basis of the potential wall/shelf distinction.

Rite Aid's final line of defense on this issue is that it is not required to comply with Section 4.4.1 because it supplies an alternative design or technology that provides "substantially equivalent or greater access to and usability of the facility." *See* 28 C.F.R., pt. 36, App. A, § 2.2 (allowing such deviations). Rite Aid claims that the relevant designs or technologies it supplies are (1) personnel to guide visually impaired customers through the store and (2) the plastic clips themselves, which use hinges and thin paper to flex away readily from anyone who collides with them. When compared to compliance with Section 4.4.1, these alternatives do not make the store as or more accessible and usable to visually disabled people.

*First*, the store manager stated that, although it was his practice to ensure that employees provide such assistance, he could not recall any blind customer ever availing himself or herself of this service (Prushko Decl. ¶¶ 2–3). There is no evidence that a similar plan has ever been

10

put into practice in any other Rite Aid store.[4] It is therefore speculation to claim that such a plan will be substantially equivalent or better than compliance with Section 4.4.1. *Second*, the flexibility of clips and paper sticking out more than four inches does not make the aisles as usable to the visually impaired as aisles with no objects projecting that far. It might not hurt as much to run into a flexible plastic clip or a piece of paper than it would be to collide with protruding timber or metal but it nevertheless could injure an eye, startle the person and thus cause a further accident, or simply humiliate him or her.

Defendant also argues that it met the substantial-equivalence standard because plaintiff had substantially equivalent access to the store, due the fact that his wife guided him. For the Court to accept this theory, it would have to find that Ms. Torres was herself an alternative design or technology and that she provided her assistance on behalf of Rite Aid. Neither is true. Finally, defendant claims there was substantially equivalent access because the object with which plaintiff nearly collided was "located in a shopping aisle where a visually impaired person . . . would not be shopping without a sighted companion" (Br. 15). This argument suggests that there was no requirement to make the store's aisles accessible if disabled people were unlikely to go there independently. The law provided no such exception to Rite Aid. More practically, even if visually disabled people would not shop independently in the aisles, they might nevertheless use them as a path to the store's pharmacy. In that case, they would be subject to the hazards of any protruding objects.

For the reasons stated above, defendant is denied summary judgment on its claim that Section 4.4.1 does not apply to the protruding objects at issue in this case.

**3. Defendant's Motion on Denial of Access.**

Defendant also moves for summary judgment on the grounds that neither "the single cardboard advertisement Plaintiff alleges he 'encountered' . . . [nor] any other allegedly 'protruding objects' in the store[] denied him access . . . in violation of the ADA" (Br. 2).

---

[4] Rite Aid operates about 3,400 stores. Rite Aid Corp., About Our Company, http://www.riteaid.com/company_info/index.php (last visited Jan. 13, 2006).

11

Defendant misses the point here. Plaintiff does not seek to prove ultimately that he was denied access. To prevail, he must instead demonstrate that Rite Aid discriminated against him. *See* 42 U.S.C. 12182(a). Discrimination in the provision of public accommodations, such as the Rite Aid store, is defined as failing to alter a facility "in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities . . . ." 42 U.S.C. 12183(a)(2). The Attorney General, in turn, has implemented that statute by adopting Section 4.4.1 and other standards. Thus, whether or not plaintiff was able to get to all the merchandise and parts of the store is not dispositive. In fact, he did not need to enter the store at all to make out a case. *See* 42 U.S.C. 12188(a)(1) ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice [of a violation]."). Plaintiff may make out a valid claim of discrimination based solely on Rite Aid's purported failure to conform the store's alterations to Section 4.4.1. For this reason, defendant's argument for summary judgment on grounds that plaintiff was not denied access is rejected.

**4.     Defendant's Motion on California State-Law Violations.**

Plaintiff also alleges that Rite Aid violated California Civil Code Sections 51(f), 54(c) and 54.1(a), which each requires compliance with the ADA (Compl. ¶¶ 4, 10–11). Rite Aid moves for summary judgment on these claims solely on grounds that they fail in the event that the ADA claim is rejected. This order denies defendant's motion on the ADA claim. Its motion therefore must be denied as to the California state-law claims.

**5.     Defendant's Motion on Standing.**

Defendant has moved for summary judgment on the basis that plaintiff does not have standing to bring this lawsuit. It first argues the plaintiff has not introduced evidence sufficient to show that he suffered injury in fact, thus failing to meet the requirements of Article III, Section 2 of the Constitution. To satisfy the injury-in-fact requirement, litigants must show "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . . By particularized, we mean that the

12

injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992) (internal quotation marks and citations omitted). A plaintiff need not prove that he or she will succeed on the merits to satisfy this and the other standing requirements. The inquiry focuses instead on the "nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Plaintiff has introduced enough evidence to show that his claim rests on an injury that, if it occurred, affected him in a personal way. The injury he claims was that he was denied an equal "*opportunity* to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of" the Rite Aid store. *See* 42 U.S.C. 12182(b)(1)(a)(i) (emphasis added). The ADA created a right for the disabled to enjoy such equal opportunity. Sighted people enjoyed the opportunity to walk down Rite Aid aisles and avoid protruding objects. Plaintiff has introduced enough evidence to go to the jury on whether he was denied that same opportunity when Rite Aid allegedly put protruding objects in the aisles where he could not have detected them. This is more than enough to demonstrate injury-in-fact in the Ninth Circuit. In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002), Judge William Fletcher, a professor and expert on standing issues, wrote for the Ninth Circuit that a plaintiff who did not even enter a store — but who knew there were illegal barriers inside it — had suffered an injury in fact. *Id.* at 1135. Plaintiff here also has introduced evidence that he has actual knowledge of the allegedly illegal barriers at the Rite Aid store. His claim therefore withstands summary judgment on whether he suffered injury in fact.

Defendant next asserts that plaintiff does not have standing because he was not "within the class of visually impaired individuals Section 4.4.1 was designed to protect — *i.e.*, individuals who use a cane for detection purposes" (Br. 17). This order assumes, without adopting, the notion that Congress and the Attorney General have limited the group of people within the zone of interests protected by Section 4.4.1 to those who use canes to detect obstacles. Plaintiff has met his burden to withstand summary judgment on this issue. He introduced evidence that he used his cane for detection purposes, including during his April 13 visit to the Rite Aid store. He stated, "On April 13, 2005 . . . [w]hile we were in the Store,

13

I . . . dragged my cane in front of me . . . as we walked down the aisles. In such situations, my cane serves the dual purpose of informing others that I am visually impaired and helping me detect objects in front of me. On that day, in the Store, I detected several objects in front of me, using my cane" (Jesus Torres Decl. I ¶ 4). This description of plaintiff's cane technique is consistent with one that the Access Board and, by ratification, the Attorney General have stated Section 4.4.1 is designed to accommodate. 28 C.F.R., pt. 35, App. A, App. § 4.4.1. Plaintiff is within the zone of interests protected by Section 4.4.1.

Defendant also claims that plaintiff lacks standing because his injury could not be redressed by the request he seeks, namely damages and injunctive relief. *See Lujan*, 504 U.S. at 561 (requiring that it be likely that a favorable decision will redress the claimed injury). Defendant's argument is patently bogus. First, plaintiff states that he will return to the store (Jesus Torres ¶ 2). Because he uses a cane for detection purposes, an injunction ordering Rite Aid to comply with Section 4.4.1 would redress his injury. Second, plaintiff requests damages which presumably would compensate him for any other injuries.

Defendant next contends that no causal connection exists between the protruding object encountered by plaintiff and his alleged injury. *See Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . traceable to the challenged action of the defendant.") (brackets in original deleted). This contention is also devoid of merit. There is sufficient evidence to demonstrate that, if plaintiff suffered the loss of equal opportunity he alleged, it was caused by Rite Aid putting protruding objects on its shelves.

Finally, defendant argues that it is entitled to summary judgment that plaintiff may not pursue injunctive relief because he has failed to demonstrate any substantial risk of future harm. Plaintiff has introduced evidence that he probably will visit the store again and that Rite Aid has violated Section 4.4.1 there (Torres Decl. II ¶ 2). He thus has properly supported his claim that he suffers a substantial risk of future harm. Defendant's argument therefore fails.

14

**6.     Plaintiff's Motion.**

Plaintiff seeks a ruling that the types of hanging merchandise, advertising sign and coupon dispenser depicted in Exhibits 1–3 of Stewart Declaration I violate Sections 4.1.3(2) and 4.4.1 when their "lowest edge[s are] between 27 inches and 80 inches above the finished floor, to the extent that [they] project[] from shelves into walking areas more than 4 inches beyond a vertical line represented by the outermost edge of the portion of the shelf that is at or below 27 inches above the finished floor" (Br. ii).

These dimensions are to vague for this Court to hold them compatible with the regulation. Specifically, it is unclear whether the four inches is measured from the edge of the shelf or from the edge of the floor. If it is measured from the edge of the shelf that is at or below 27 inches, and that shelf is set back from the edge of the floor, plaintiff's rule would bar objects that project less than four inches into the aisle. For this reason alone, plaintiff's motion would be denied. Even if there were not this problem, plaintiff's motion would be denied because he asks this Court to require strict compliance with the dimensions of Section 4.4.1. No such strict compliance is required. Rite Aid is exempt from strict compliance if its deviation is within "conventional building industry tolerances for field conditions." *See* 28 C.F.R., pt. 36, App. A, § 3.2. To succeed on this motion, plaintiff would have to introduce evidence that the industry *disallows* any deviation. He has not done so. For these reasons, this Court cannot hold that strict compliance with the dimensions of Section 4.4.1 is required.[5]

## CONCLUSION

For the reasons stated above, both motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

Dated: January 27, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[5] At trial, plaintiff will have the burden of proving that Rite Aid exceeded such tolerances.

15